**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000061
27-FEB-2015
09:30 AM**

NO. CAAP-13-0000061

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
PATRICK DEGUAIR, JR., Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-0773)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Reifurth, J.,
with Fujise, J., concurring and dissenting)

This appeal raises questions regarding the application of the mitigating defense to kidnapping set forth in Hawaii Revised Statutes (HRS) § 707-720(3) (2014). To give kidnappers an incentive to release their victims in a safe place with no serious or substantial bodily injury, and to reward them for such action, the Legislature established a mitigating defense that reduces the penalty for kidnapping. Specifically, "[i]n a prosecution for kidnapping, it is a defense which reduces the offense to a class B felony that the defendant voluntarily released the victim, alive and not suffering from serious or substantial bodily injury, in a safe place prior to trial." HRS § 707-720(3). Where the mitigating defense applies, the Legislature reduced the crime from a twenty-year class A felony to a ten-year class B felony. Id.

The instant case stems from the robbery of the Aiea Cue pool hall and the kidnapping of four individuals who were present. Defendant-Appellant Patrick Deguair, Jr. (Deguair) and co-defendants David Teo (Teo) and Ju Young Woo (Woo) (collectively, "Defendants") were each charged with first-degree robbery (Count 1) and the kidnapping of four individuals at Aiea Cue (Counts 2, 3, 4, and 5). Teo and Woo pleaded guilty to certain offenses pursuant to plea agreements with Plaintiff-Appellee State of Hawai'i (State), and Deguair proceeded to trial. During the settling of jury instructions after the close of the evidence, the Circuit Court of the First Circuit (Circuit Court)[1] ruled, as a matter of law, that the mitigating defense applied to the alleged kidnapping of three of the victims. The Circuit Court submitted to the jury the question of whether the mitigating defense applied to the alleged kidnapping of the fourth victim, Paul Beltran (Beltran). The only significant difference between Beltran and the other victims was that Beltran had been handcuffed upon Defendants' entry into Aiea Cue and remained handcuffed when Defendants departed from Aiea Cue.

The jury found Deguair guilty of the included offense of second-degree robbery (Count 1) and guilty as charged of the four kidnapping counts (Counts 2 through 5). With respect to the kidnapping charge involving Beltran, the jury found that the State had disproved the mitigating defense. The jury also found merger between the robbery count and each of the kidnapping counts. Based on the jury's merger finding, the Circuit Court dismissed the robbery count. The Circuit Court sentenced Deguair to twenty years of imprisonment for the kidnapping of Beltran (Count 2) and ten years of imprisonment for the kidnapping of each of the other three victims (Counts 3, 4, and 5), with all terms to run concurrently.

---

[1] The Honorable Glenn J. Kim presided over the proceedings relevant to this appeal.

On appeal, Deguair argues that the Circuit Court erred in: (1) refusing to apply the mitigating defense and reduce the kidnapping of Beltran to a class B felony; (2) failing to *sua sponte* dismiss the kidnapping counts by merging them together and then into the robbery count; (3) denying his motion to suppress evidence; (4) granting most of the State's motion in limine and excluding evidence of certain bad acts of Teo and Woo; (5) denying his motion for mistrial; and (6) denying his motion for a new trial.

Although Defendants did not remove the handcuffs used to restrain Beltran when they departed from Aiea Cue, it was undisputed that they left Beltran uninjured, in familiar and safe surroundings, and in the company of unrestrained individuals, including a friend and others Beltran knew, who quickly called the police. We conclude that the State failed to present sufficient evidence to disprove the mitigating defense as to Beltran's kidnapping. Accordingly, we hold that the Circuit Court erred in failing to apply the mitigating defense to Beltran's kidnapping and reduce that offense to a class B felony. We affirm the Circuit Court in all other respects. We vacate Deguair's conviction for a class A felony and his sentence on Count 2, and we remand the case for entry of a judgment of conviction on Count 2 as a class B felony and for resentencing on Count 2.

BACKGROUND

I.

The State charged Defendants in relevant part as follows:

> COUNT I: On or about the 3rd day of April, 2008, in the City and County of Honolulu, State of Hawaii, PATRICK DEGUAIR, JR., JU YOUNG WOO, and DAVID TEO, while in the course of committing a theft from Wayne K. Enterprise, Inc., dba Aiea Cue, and/or HSK Hawaii, Inc., and/or Ruth Lemons, and/or John Llacuna, and while armed with a dangerous instrument, did threaten the imminent use of force against a person who was present, with intent to compel acquiesce to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in

violation of Section 708-840(1)(b)(ii) of the Hawaii Revised Statutes.

. . . .

COUNT II: On or about the 3rd day of April, 2008, in the City and County of Honolulu, State of Hawaii, PATRICK DEGUAIR, JR., JU YOUNG WOO, and DAVID TEO, did intentionally or knowingly restrain Paul Beltran with intent to terrorize Paul Beltran or a third person, thereby committing the offense of Kidnapping, in violation of Section 707-720(1)(e) of the Hawaii Revised Statutes.

. . . .

COUNT III: On or about the 3rd day of April, 2008, in the City and County of Honolulu, State of Hawaii, PATRICK DEGUAIR, JR., JU YOUNG WOO, and DAVID TEO, did intentionally or knowingly restrain Ruth Lemons with intent to terrorize Ruth Lemons or a third person, thereby committing the offense of Kidnapping, in violation of Section 707-720(1)(e) of the Hawaii Revised Statutes.

. . . .

COUNT IV: On or about the 3rd day of April, 2008, in the City and County of Honolulu, State of Hawaii, PATRICK DEGUAIR, JR., JU YOUNG WOO, and DAVID TEO, did intentionally or knowingly restrain John Llacuna, with intent to terrorize John Llacuna or a third person, thereby committing the offense of Kidnapping, in violation of Section 707-720(1)(e) of the Hawaii Revised Statutes.

. . . .

COUNT V: On or about the 3rd day of April, 2008, in the City and County of Honolulu, State of Hawaii, PATRICK DEGUAIR, JR., JU YOUNG WOO, and DAVID TEO, did intentionally or knowingly restrain Talagu Moliga with intent to terrorize Talagu Moliga or a third person, thereby committing the offense of Kidnapping, in violation of Section 707-720(1)(e) of the Hawaii Revised [Statutes].

II.

With respect to the mitigating defense issue, the following pertinent evidence was presented at trial.

In the early morning hours of April 3, 2008, the following individuals were inside the Aiea Cue pool hall: John Llacuna (Llacuna), who worked as a cashier for Aiea Cue; Ruth Lemons (Lemons), who was Llacuna's girlfriend; Beltran, who was friends with Llacuna and helped to close Aiea Cue; and Talagu Moliga (Moliga), who worked as a lot attendant and as security for Aiea Cue.

Sometime after Aiea Cue had closed, Deguair, Woo, and Teo burst in through the back door of the pool hall. When Beltran tried to run, he was tackled and his hands were handcuffed behind his back. Llacuna, Lemons, and Moliga were not physically restrained, but Defendants ordered them and Beltran to lie face down on the ground by the back area. Defendants then proceeded to disable the security cameras, used a blow torch and crowbar to open an ATM machine and a change machine, and took money, cigarettes, and other items. A short time after Defendants entered the pool hall, a phone rang, at which time one of the Defendants said that it was time to leave. Defendants left through the back door.

Moliga waited a couple of seconds to confirm that Defendants had actually left before getting up and locking the back door. Llacuna immediately called the police. After the police arrived, they removed Beltran's handcuffs.

### III.

During the settling of jury instructions after the close of the evidence, the Circuit Court ruled, as a matter of law, that the mitigating defense had been established for the counts in which Lemons, Llacuna, and Moliga were the alleged victims. The Circuit Court, however, ruled that it would submit to the jury the question of whether the mitigating defense applied to the alleged kidnapping of Beltran charged in Count 2.

The jury found Deguair guilty of the lesser included offense of second-degree robbery in Count 1. In Count 2, the jury found Deguair guilty as charged of kidnapping Beltran and also found that the mitigating defense did not apply.[2] As to the

---

[2] The jury answered "yes" to each of the following three interrogatories regarding the mitigating defense:

1. Has the prosecution proven beyond a reasonable doubt that prior to trial [Deguair] did not release Paul Beltran voluntarily?

2. Has the prosecution proven beyond a reasonable doubt that prior to trial [Deguair] did not release Paul Beltran alive and not suffering from serious or substantial bodily injury?

(continued...)

5

remaining kidnapping counts (Counts 3, 4, and 5), the jury found Deguair guilty.

The jury was asked to answer interrogatories in the event it found Deguair guilty of the charged or lesser included offenses for the following pairs of counts: Counts 1 and 2, Counts 1 and 3, Counts 1 and 4, and Counts 1 and 5. With respect to Counts 1 and 2, the jury was asked:

1.   Did the prosecution prove beyond a reasonable doubt that Counts 1 and 2 were not part of a continuing and uninterrupted course of conduct? and

2.   Did the prosecution prove beyond a reasonable doubt that [Deguair] committed Count 1 and Count 2 with separate and distinct intents, rather than with one intention, one general impulse, and one plan encompassing both offenses?

The jury was asked the same interrogatories with respect to Counts 1 and 3, Counts 1 and 4, and Counts 1 and 5. The jury answered "no" to the interrogatories for each of the pairs of counts.

Without objection from Deguair or the State, the Circuit Court dismissed Count 1 "pursuant to the jury verdict" and adjudged Deguair guilty of the four kidnapping counts.

IV.

The Circuit Court sentenced Deguair to twenty years imprisonment on Count 2 and ten years imprisonment on each of Counts 3, 4, and 5, with all terms to be served concurrently. The Circuit Court entered its Judgment of Conviction and Sentence (Judgment) on January 2, 2013, and this appeal followed.

DISCUSSION

On appeal, Deguair raises six points of error. We conclude that only his claim regarding the mitigating defense to

---

[2]/(...continued)
3.   Has the prosecution proven beyond a reasonable doubt that prior to trial [Deguair] did not release Paul Beltran in a safe place?

The jury only needed to answer one of these interrogatories in the affirmative to reject the mitigating defense. See State v. Mara, 102 Hawaiʻi 346, 356-57, 76 P.3d 589, 599-600 (App. 2003).

Beltran's kidnapping has merit, and we begin with a discussion of that claim.

## I.

Deguair alleges that the Circuit Court erred in refusing to apply the mitigating defense to Beltran's kidnapping and reduce that offense to a class B felony. We agree.

## A.

Kidnapping is a class A felony, which can be reduced to a class B felony where the mitigating defense applies. Under HRS § 707-720(3), the mitigating defense applies where "the defendant voluntarily release[s] the victim, alive and not suffering from serious or substantial bodily injury, in a safe place prior to trial." HRS § 707-720(3). The Commentary to the kidnapping statute explains that the Legislature's purpose in enacting the mitigating defense was "(1) to differentiate according to the severity of the actual harm involved, and (2) to encourage the actor to proceed less dangerously once the criminal course of conduct has begun." Commentary to HRS §§ 707-720 to 707-722.

The Hawai'i mitigation scheme is similar to that set forth in Section 212.1 of the Model Penal Code (MPC). The commentary to MPC Section 212.1 explains the rationale for a mitigating defense to kidnapping:

> If the most severe sanctions are available once some harm has come to the victim, there is no remaining incentive not to do further harm. Thus, while causing harm to the victim will aggravate the offense as explained above, the actor may still escape the extreme sanctions of a first-degree felony by preserving the life of the victim and voluntarily releasing him alive and in a safe place prior to trial.
>
> The effect of this scheme is to provide at every stage an incentive to release the victim and not to inflict any further harm. The requirement that the release be "voluntary" means that rescue by the police or escape by the victim will not operate in mitigation of the first-degree penalties. So long as the actor maintains his control over the victim, therefore, the risk of first degree penalties will be present. Penalties will escalate above the second-degree level, moreover, according to the degree of harm inflicted upon the victim and the number of separate offenses committed. The escalation can be terminated at any point and first-degree penalties avoided by the voluntary conduct of the actor.

Model Penal Code and Commentaries § 212.1 cmt. at 233-34 (Official Draft and Revised Comments 1980) (emphases added).

B.

The following was shown through undisputed evidence: Beltran was familiar with Aiea Cue and well acquainted with the other kidnapping victims, Llacuna, Lemons, and Moliga. Beltran was friends with Llacuna and helped close Aiea Cue. Llacuna was the cashier for Aiea Cue, Lemons was Llacuna's girlfriend, and Moliga provided security for Aiea Cue and was its lot attendant. Defendants handcuffed Beltran after he attempted to run, but they did not physically restrain the other victims. A few seconds after Defendants left Aiea Cue, Moliga locked the door. Llacuna called the police, who removed the handcuffs from Betran after they arrived. There was no indication that Defendants' actions resulted in injury to any of the victims. Aiea Cue was a commercial establishment located in Honolulu on Kamehameha Highway.

In ruling on the mitigating defense issue, the Circuit Court found that the facts relating to the defense were basically undisputed. The Circuit Court agreed with Deguair that, as a matter of law, the State had failed to disprove the mitigating defense beyond a reasonable doubt as to Llacuna, Lemons, and Moliga. However, the Circuit Court denied Deguair's request for the same ruling as to the kidnapping of Beltran. The Circuit Court distinguished Beltran's situation from that of the other victims based on the sole fact that Defendants did not remove the handcuffs placed on Beltran when they left Aiea Cue. The Circuit Court stated:

> And in my view I agree with the defense, except for Beltran.
> I agree with the State as to Beltran. They didn't take the
> cuffs off. He was still cuffed and I think that makes it a
> factual question for the jury. So it's denied as to
> Beltran. It's granted as to the other three.

C.

We conclude that there was insufficient evidence to disprove the mitigating defense with respect to Beltran's

8

kidnapping and therefore the Circuit Court should have reduced that offense to a class B felony. The Legislature's rationale for establishing the mitigating defense clearly and directly applies to Beltran's situation. As acknowledged by the Circuit Court, the only fact that distinguished Beltran's situation from that of the other victims were his handcuffs. This distinction did not justify a finding that Defendants had not voluntarily released Beltran and therefore the mitigating defense was inapplicable to Beltran's kidnapping.[3]

There was no dispute that Defendants left Beltran uninjured at Aiea Cue, in the company of unrestrained individuals, including a friend and others well-known to Beltran, who quickly called the police. That Beltran remained handcuffed did not detract from the fact that he was left at Aiea Cue, a place that was safe and familiar to him, with readily available assistance and with no threat of further harm. We conclude that the Circuit Court erred in failing to apply the mitigating defense to Beltran's kidnapping. Our conclusion is fully supported by the Legislature's purpose in enacting the mitigating defense -- to differentiate punishment "according to the severity of the actual harm involved" and "to encourage the actor to proceed less dangerously once the criminal course of conduct has begun." See Commentary to HRS §§ 707-720 to 707-722. Applying the mitigating defense to Beltran's situation would advance and serve the Legislature's purpose, whereas denying the defense would be inconsistent with the reason for the defense.

II.

Deguair contends that the Circuit Court committed plain error in failing to *sua sponte* dismiss the kidnapping counts by merging them together and then into the robbery count. We disagree.

---

[3] The State argued in closing that because Beltran remained handcuffed, he had not been "released" voluntarily by Deguair, and therefore the prosecution had disproved the mitigating defense. On appeal, both parties only focus on the "voluntarily released" element of the mitigating defense.

Based on the jury's answers to the interrogatories, the Circuit Court merged the robbery count into the kidnapping counts. It dismissed the robbery count and adjudicated Deguair guilty of the four kidnapping counts. Where the jury returns a verdict of guilty on two counts that merge, the State is given the option to decide which of counts subject to merger should be dismissed. See State v. Padilla, 114 Hawai'i 507, 517, 164 P.3d 765, 775 (App. 2007). Here, the State did not oppose the Circuit Court's decision to merge the robbery count into the separate kidnapping counts.[4/] We conclude that the Circuit Court did not err in dismissing the robbery count rather than the kidnapping counts.

Deguair cites no authority to support the proposition that kidnapping counts regarding different victims are subject to merger. We conclude that the kidnapping counts charged in this case required proof of a separate and distinct intent with respect to each victim and were not subject to merger. See State v. Correa, 5 Haw. App. 644, 706 P.2d 1321 (1985) (affirming kidnapping counts involving separate victims); State v. Kwambana, No. CA2013-12-092, 2014 WL 2732311, at *4 (Ohio Jun. 16, 2014) (concluding that "a kidnapping that involves multiple kidnapping victims necessarily includes a finding of a separate animus for each kidnapping offense"); Jones v. State, 725 S.E.2d 236, 241 (Ga. 2012) (holding that the defendant's "contention that the trial court erroneously failed to merge the three kidnapping counts with each other 'is specious since those counts involved different victims'" (citation omitted)). We therefore reject Deguair's argument that the Circuit Court erred in failing to merge the kidnapping counts together.

---

[4/] We note that when the Circuit Court made its merger decision, the jury had found Deguair guilty of a class A felony (without the mitigating defense) for the Count 2 kidnapping and a class B felony for second-degree robbery with respect to Count 1. The State does not argue on appeal that it would have objected to the Circuit Court's merger decision if the mitigating defense had been applied to Count 2.

III.

Deguair contends that the Circuit Court erred when it denied his motion to suppress evidence. The evidence Deguair sought to suppress had been seized by police during the execution of a search warrant in an investigation unrelated to the Aiea Cue case. Deguair contends that the seizure of the challenged evidence was illegal because the police exceeded the scope of the search warrant in discovering the evidence related to the Aiea Cue case and because the discovery of this evidence was not inadvertent. Deguair's contentions are without merit.

On the same day as the kidnappings and robbery at Aiea Cue, the police obtained a warrant to search a hotel room that had been linked to Deguair. The detectives involved in preparing and executing the search warrant were not involved in the Aiea Cue investigation, but were involved in a murder investigation, in which Deguair was a suspect, that was unrelated to the Aiea Cue case. Prior to the execution of the search warrant, at least one of the detectives in the murder investigation was aware that Aiea Cue had been robbed and that the robbery included breaking into an ATM machine. Deguair, however, had not been identified as a suspect in the kidnappings and robbery at Aiea Cue. During the execution of the search warrant, the police seized evidence related to the Aiea Cue case.

We reject Deguair's claim that the police exceeded the scope of the search warrant in discovering the evidence related to the Aiea Cue case. The search warrant authorized the police to search for firearms, a silencer, and ammunition, as well as articles of personal property tending to establish the identity of the person in control of the hotel room and containers where evidence may be found, including personal identification, bills, checks, photographs, and other documents. The police did not exceed the scope of the warrant in discovering the evidence related to the Aiea Cue case, which was discovered in areas and containers the police were authorized to search under the search warrant.

11

We also reject Deguair's claim that the discovery by the police of the evidence related to the Aiea Cue case was not inadvertent. In denying Deguair's motion to suppress evidence, the Circuit Court specifically found that prior to entering the hotel room to execute the search warrant, detectives in charge of the murder investigation "had no reason to believe that evidence from . . . the Aiea Cue robbery would be found in the room." There was substantial evidence to support the Circuit Court's finding, which we conclude was not clearly erroneous. Deguair provides no basis for this court to overturn the Circuit Court's determination that the evidence he sought to suppress was legally discovered and seized under the plain view doctrine. See State v. Meyer, 78 Hawai'i 308, 314-17, 893 P.2d 159, 165-68 (1995).

IV.

Deguair argues that the Circuit Court abused its discretion in granting most of the State's motion in limine and excluding evidence of certain bad acts of Teo and Woo. We disagree.

Prior to trial, the State moved in limine to preclude Deguair from introducing eleven items of "bad act" evidence relating to the alleged involvement of Teo and Woo in acts of violence and "strong arm" and criminal debt collection activities."[5] The State argued that Deguair's disclosure of his

---

[5] The State's motion in limine sought to exclude the following eleven items of evidence:

1. David Teo is/was known as a strong arm and debt collector for Oahu criminal organizations.

2. David Teo participated in the "taxing" of legal and illegal gambling businesses for protection of their businesses.

3. In or about March 2008, David Teo smashed a man's face into the windshield of a car while attempting to collect money from the man, in the parking lot of Tony Roma's restaurant in Pearl City.

4. David Teo told Defendant Patrick Deguair, Jr. that he (David Teo) had just gotten out of jail and "needed this take."

(continued...)

12

intent to use this evidence had been untimely under Hawaii Rules of Evidence (HRE) Rule 404(b) (Supp. 2014). Deguair opposed the State's motion in limine, arguing that all the alleged bad acts listed in the State's motion in limine were relevant to his duress and choice of evils defenses. Deguair acknowledged that the proffered bad act evidence would be introduced solely through his own testimony.

The Circuit Court ruled that Deguair would be permitted to testify regarding the alleged bad acts described in items 3 and 5 of the State's motion in limine -- that Deguair witnessed Teo smash a man's face into the windshield of a car and later reminded Deguair of this incident. The Circuit Court excluded the remainder of the bad acts identified in the State's motion in limine, ruling that the probative value of the proffered uncorroborated evidence was "substantially outweighed by the danger of unfair prejudice and confusion of the issues, et cetera[,]" pursuant to HRE Rule 403, and that Deguair's disclosure of his intent to use the evidence had been untimely.

At trial, Deguair was permitted to testify that he witnessed Teo smash a man's face into a car and that Teo reminded Deguair of this incident in ordering him to participate in the

---

5/ (...continued)

5.     David Teo said to Defendant Patrick Deguair, Jr., "Remember what happened to the guy in the parking lot."

6.     Ju Young Woo protected criminal organizations operating in the Pearl City and Aiea Communities.

7.     Ju Young Woo received and sold stolen motor vehicle parts.

8.     Ju Young Woo collected money for drug dealers.

9.     Ju Young Woo beat several people with a metal pipe on the bike path near the ABC Used Auto Parts.

10.    Aiea Cue was not paying its "tax" for protection to "the Samoans."

11.    Ju Young Woo needed money to pay a lawyer for representation concerning an arrest for stealing a tractor.

Aiea Cue robbery/kidnappings. Prior to Deguair taking the stand, the Court also ruled that Deguair would be permitted to testify that he witnessed Woo kill a man (an alleged bad act that had not been identified in the State's motion in limine) and that Deguair acceded to Woo's demand to participate in the Aiea Cue robbery/kidnappings because he was afraid of Woo. Although the Circuit Court ruled that Deguair would be allowed to testify about the bad act killing allegedly committed by Woo, Deguair chose not to present such evidence during his testimony.

We conclude that the Circuit Court did not abuse its discretion in ruling on the State's motion in limine. Deguair's disclosure of his intent to use the bad act evidence was untimely. The trial had been pending for several years, and Deguair did not provide a reasonable explanation for why he waited until two weeks before trial to disclose his intent to use the evidence identified in the State's motion in limine. Permitting Deguair to introduce the excluded bad act evidence would have created a danger of unfair prejudice and confusion of the issues, and it may have resulted in unduly prolonging the trial. Moreover, the Circuit Court allowed Deguair to present evidence (other than the excluded bad acts) that directly supported his duress and choice of evils defenses. Under the circumstances of this case, we cannot say that the Circuit Court abused its discretion in ruling on the State's motion in limine, and we conclude that the Circuit Court's ruling did not deprive Deguair of a fair trial.

V.

Deguair argues that the Circuit Court abused its discretion in denying his motion for mistrial. Deguair's mistrial motion was based on the State's asking Deguair at trial whether he "took David Teo to the Koko Head Range to shoot guns" before the Aiea Cue robbery/kindappings. Deguair contends that, as the Circuit Court found, this question was prejudicial and improperly suggested bad act evidence. The State counters that the question did not seek bad act evidence, because going to a

14

shooting range is not a bad act, but instead was designed to elicit relevant evidence showing that Deguair and Teo were friends and that Deguair had not been coerced to participate in the Aiea Cue robbery/kidnappings.

We need not resolve whether the State's question was improper. The Circuit Court sustained defense counsel's objection to the question before Deguair gave an answer. The Circuit Court offered to strike the question and instruct the jury to disregard it, but defense counsel declined to pursue this remedy offered by the Circuit Court.[6/] Given the brief and isolated nature of the State's question, and the Circuit Court's sustaining of defense counsel's objection before Deguair gave an answer, we conclude that the Circuit Court did not abuse its discretion in declining to declare a mistrial.

VI.

Deguair argues that the Circuit Court abused its discretion by denying his motion for new trial. We disagree.

Deguair moved for a new trial based on his assertion that Woo presented false testimony at trial. This argument was based on (1) Woo's testimony at trial that he did not see anything inside the change machine except canisters containing coins and did not take payroll checks from the change machine, and (2) a pretrial statement by Wayne Choe (Choe), the owner of Aiea Cue, that the change machine was used as a safe and stored $1,100-1,200 in currency that was taken in the robbery.

The State argued, among other things, that (1) Deguair had not shown that Woo's testimony constituted perjury, (2) the asserted discrepancy between Woo's testimony and Choe's statement was not newly discovered evidence, and (3) the contents of Choe's statement was known to the defense before trial. The Circuit

_____

[6/] We note that in its preliminary instructions to the jury, the Circuit Court instructed the jury that an unanswered question was not evidence of any kind. The jury is presumed to follow the trial court's instructions. State v. Kazanas, 134 Hawai'i 117, 129, 336 P.3d 217, 229 (App. 2014).

Court agreed with these arguments and denied Deguair's motion for a new trial.

We review a trial court's decision to deny a motion for new trial for clear abuse of discretion. State v. Yamada, 108 Hawai'i 474, 478, 122 P.3d 254, 258 (2005). "When a defendant seeks a new trial on the grounds that a prosecution witness gave false testimony at trial, the trial court must first determine whether 'it is reasonably satisfied that the testimony at trial of a material prosecution witness was, in fact, false.'" State v. Cordeiro, 99 Hawai'i 390, 424, 56 P.3d 692, 726 (2000) (brackets and citation omitted).

Based on our review of the record, Deguair did not demonstrate that Woo provided false testimony or that Woo committed perjury. In addition, Woo's alleged false testimony concerned a collateral matter. We conclude that the Circuit Court did not abuse its discretion in denying Deguair's motion for a new trial.

## CONCLUSION

For the foregoing reasons, we vacate the Circuit Court's Judgment with respect to Deguair's conviction and sentence on Count 2 as a class A felony, and we remand the case for entry of a judgment of conviction on Count 2 as class B felony and for resentencing on Count 2. We affirm the Circuit Court's Judgment with respect to the convictions and sentences on Counts 3, 4, and 5.

DATED: Honolulu, Hawai'i, February 27, 2015.

On the briefs:

Dwight C.H. Lum
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*Lawrence M. Reifurth*
Associate Judge